IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FRANK ROBERT CHESTER                    :
        Petitioner,

v.                                      :
                                                CIVIL NO. 99-4111
COMMISSIONER MARTIN HORN;
PHILIP JOHNSON; JOSEPH P.               :
MAZURKIEWICZ; and
THE DISTRICT ATTORNEY OF BUCKS
COUNTY                                  :
        Respondents.


**Memorandum**

**Jones, J.**                                   **February 28, 2011**


## I.    Introduction

On May 20, 1988, Petitioner Frank Chester (hereinafter "Petitioner" or "Chester"), along

with his co-defendant Richard Laird ("Laird"), was convicted by a jury in the Bucks County

Court of Common Pleas, of first-degree murder, aggravated assault, kidnapping, unlawful

restraint, false imprisonment, possession of instruments of crime, and criminal conspiracy.  On

May 21, 1988, the same jury sentenced both Petitioner and Laird to death.

At trial, Petitioner was represented by Thomas Edwards, Jr., Esquire ("Edwards").  Prior

to the commencement of Petitioner's criminal trial, Edwards was arrested in Bucks County for

Driving under the Influence of Alcohol ("DUI").  On September 15, 1988, Edwards was placed

in the Accelerated Rehabilitative Disposition ("ARD") program by the Honorable Edward G.

Biester, Jr. ("Biester"); the same judge who presided over Petitioner's criminal trial and

sentencing.

Following his conviction, Petitioner, still represented by Edwards, filed Post-Verdict Motions. These motions were denied by Judge Biester on June 29, 1989.

On August 23, 1989, John Fioravanti, Esquire ("Fioravanti") and Gregg Blender, Esquire ("Blender") of the Bucks County Public Defender's Office were appointed to represent Petitioner. Petitioner, through his new counsel, appealed his conviction and sentence to the Pennsylvania Supreme Court. On March 20, 1991, the Pennsylvania Supreme Court affirmed the judgment of sentence and on November 12, 1991, the United States Supreme Court denied Petitioner's Petition for Writ of Certiorari.

On April 17, 1996, Petitioner, represented by Jeffrey Francis Orchard, Esquire ("Orchard"), filed a petition under the Post Conviction Relief Act ("PCRA"). On September 2, 1997, the petition was ultimately dismissed by Judge Biester. Represented by Mark Lancaster, Esquire ("Lancaster") and Orchard, Petitioner appealed said decision and on June 24, 1999, the Pennsylvania Supreme Court affirmed the PCRA court's denial of Petitioner's PCRA petition.

On August 16, 1999, Petitioner filed a *pro se* Habeas Corpus Petition in the United States District Court for the Eastern District of Pennsylvania. Counsel was appointed and on February 5, 2001, Petitioner was granted an extension to file an Amended Habeas Corpus Petition until April 30, 2001. However, on February 8, 2001, Petitioner filed a second Post Conviction Relief Act petition in state court, alleging that a conflict of interest by trial counsel resulted in ineffective assistance.

On April 27, 2001, Petitioner filed an Amended Petition for Habeas Corpus Relief. Per the July 24, 2001 Order of the Honorable James T. Giles, said action was stayed pending final

resolution of the outstanding state claim, which Judge Biester ultimately denied as untimely.  On

March 21, 2006, the Pennsylvania Supreme Court affirmed the PCRA Court's decision

dismissing Petitioner's second PCRA petition.

On November 3, 2008, Petitioner's habeas matter was transferred to this Court.[1]

Additional briefing was submitted and on February 8, 2010, the Commonwealth requested that

this Court "[ ] affirm Petitioner's convictions for Second Degree Murder and the remaining

counts, and remand the case to the trial court permitting the Commonwealth the option of re-

sentencing Petitioner on the counts for which he stands convicted and/or providing Petitioner

with a new trial on First Degree Murder followed by a new sentencing hearing if convicted."

(Doc. No. 62 at 3.)

On March 22, 2010, the parties appeared before this Court to discuss the

Commonwealth's concession regarding Petitioner's First Degree Murder conviction and

sentence, as well as to present arguments primarily pertaining to Petitioner's conflict of interest

claim.[2]  Subsequent to said hearing, supplemental briefing was submitted, rendering this matter

ripe for disposition.

**II.     Discussion**

Preliminarily, this Court opines that in light of the decision in *Laird v. Horn,* 414 F.3d

419 (3d Cir. 2005), and as conceded to by Respondent, Petitioner's conviction and sentence on

first degree murder charges must be vacated.  Accordingly, all guilt phase and sentencing issues

---

[1]  On September 17, 2008, this matter was transferred from Judge Giles to the Honorable
Mary A. McLaughlin, before ultimately being assigned to this Court.

[2]  Arguments were originally scheduled for February 10, 2010 but were postponed due to
inclement weather.

related to Petitioner's First Degree Murder conviction, are necessarily rendered moot. With regard to Petitioner's remaining claims, this Court finds that an evidentiary hearing on the conflict of interest issue is warranted and that disposition of all remaining claims prior to said hearing would be premature, as they too may be rendered moot if Petitioner is ultimately granted a new trial on the basis of his conflict claim.

### A. Conflict of Interest

Petitioner alleges an actual conflict of interest by Attorney Edwards in representing him, because Edwards himself was being prosecuted on criminal charges by the same District Attorney's office during the preparation for and trial of Petitioner's case.[3]

Through ample citation to both federal law, as well as specific provisions of the federal constitution, Petitioner exhausted his conflict claim in state court. Although the state court had sufficient notice that a federal constitutional claim was being presented, it declined to reach the claim's merits because it found the claim to be untimely under 45 Pa.C.S.A. § 9545(b)(1).

---

[3] As part of his conflict claim, Petitioner asserts that he is not required to show prejudice and that the prosecution was constructively aware of the conflict, therefore the failure to disclose the alleged conflict amounts to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Petitioner contends that the District Attorney of Bucks County knew, or should have known, that his office was prosecuting Edwards on an unrelated matter at the same time Petitioner was being prosecuted. He further alleges that the failure to disclose this information to Petitioner constituted a *Brady* violation. Respondents argue that the state court's time barring of Petitioner's argument precludes this Court from reviewing this claim.

The prosecution is constitutionally required to turn over all evidence that is material to guilt or punishment, or the impeachment of a Commonwealth witness, even if the evidence is only known to members of the police department. *See Brady v. Maryland*, 373 U.S. 83 (1963). In the case at bar, the failure to inform Petitioner about his attorney's unrelated arrest does not violate *Brady,* as it was not material to Petitioner's guilt or punishment and did not involve impeachment evidence. As such, Mr. Edwards's arrest cannot be deemed "exculpatory." Accordingly, this Court finds Petitioner's *Brady* claim unavailing.

4

However, for reasons which follow, the § 9545(b)(1) statute of limitations does not bar Plaintiff's late claims. Inasmuch as the Pennsylvania Supreme Court declined to adjudicate Petitioner's claim on the merits, this Court's review is *de novo*. *See* 28 U.S.C. § 2254(d)(limiting the grant of the writ "with respect to any claim that was adjudicated on the merits in State court proceedings"). *See also Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001); *Hameen v. Delaware*, 212 F.3d 226, 248 (3d Cir. 2000), *cert. denied,* 532 U.S. 924 (2001).

### (1) Conflict Standard

As noted in *Strickland v. Washington*, 466 U.S. 668, 692 (1984):

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e. g., Fed. Rule Crim. Proc. 44( c) , it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland v. Washington*, 466 U.S. 668, 692 (U.S. 1984)(internal citations omitted).

In that same vein, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002). *See also, Sullivan*, 446 U.S. at 346-347 (holding that prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance"); *Glasser v. U.S.*, 315 U.S. 60, 72-75 (1942) (reversing conviction upon finding that trial counsel's failure to cross-examine a prosecution witness which linked defendant with the crime resulted from counsel's desire to diminish the jury's perception of a co-defendant's guilt). However, the ***possibility*** of conflict, such as "a mere theoretical division of loyalties," is insufficient to impugn a criminal conviction. *See Mickens,* 535 U.S. at 171. *See* also *Sullivan*, 446 U.S. at 348.

## (2)     Factual Basis for Alleged Conflict

In this case, Petitioner's claim of a conflict of interest is primarily based upon the fact that Edwards had a criminal charge pending against him in Bucks County at the same time that he represented Petitioner. Specifically, on March 19, 1988, just six days after becoming Petitioner's counsel, Mr. Edwards was himself arrested in Bucks County and was ultimately charged with driving under the influence ("DUI") of alcohol.[4] (Petitioner's Am. Pet. p. 10 ¶ 1.) Because this was Mr. Edwards's first DUI offense, he was eligible for the Accelerated Rehabilitative Disposition Program (ARD). ARD was a diversionary program of leniency offered only to first time offenders and the District Attorney's office had sole authority in choosing whether to allow

---

[4] At that time in Pennsylvania, driving under the influence was a misdemeanor of the second degree punishable by up to two (2) years imprisonment. A first conviction carried with it a mandatory sentence of 48 hours of imprisonment. (Resp. to Petitioner's Post-Argument Letter, p.2.)

Mr. Edwards into the program. *Id.* On September 15, 1988, Mr. Edwards was admitted into the ARD program by the Honorable Edward G. Biester - the same judge who presided over Petitioner's trial. *Id.*

Following his conviction, Petitioner filed Post-Verdict Motions, which were denied by Judge Biester on June 29, 1989.

In view of the facts that: (1) Judge Biester presided over both Mr. Edwards's DUI case and Petitioner's capital murder case during the same period of time; (2) in seeking admittance into the ARD program, Mr. Edwards was seeking leniency from the same office that was prosecuting Petitioner; and (3) neither Judge Biester nor the District Attorney's office informed Petitioner of his attorney's recent arrest or pending criminal proceedings, nor sought a waiver of any potential conflict, Petitioner has clearly provided this Court with adequate examples which could *potentially* establish his allegation that Mr. Edwards's was laboring under a conflict that adversely affected his representation of Petitioner.

### (3)     Entitlement to Review and a Hearing

As noted above, following his conviction, Petitioner filed Post-Verdict Motions, which were denied by Judge Biester on June 29, 1989. (Petitioner's Am. Pet. p. 10 ¶ 1.) On August 23, 1989, the Bucks County Public Defender's Office was appointed to represent Petitioner. *Id.* Through his new counsel, Petitioner appealed his conviction and sentence to the Pennsylvania Supreme Court, alleging among other things, ineffective assistance from Mr. Edwards. *Id.* Both the conviction and sentence were affirmed by the Pennsylvania Supreme Court on March 20, 1991. *See Commonwealth v. Chester*, 587 A.2d 1367 (Pa. 1991). On November 12, 1991, the United States Supreme Court denied Petitioner's petition for Writ of Certiorari.

On April 17, 1996, Petitioner filed a Motion for Post Conviction Collateral Relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), again alleging ineffective assistance of counsel. In these proceedings, Petitioner claimed that his counsel's ineffectiveness was due in part to severe alcohol and substance abuse problems. Additionally, Petitioner filed a Motion to Re-Open the Record, on the basis that his trial counsel acted under a conflict of interest when representing him at trial because trial counsel previously represented the Bristol Police Department[5] and because counsel had been suspended from the practice of law prior to the PCRA hearing. (Respondent's Pre-Argument Mem. p. 5.) At that time, Petitioner requested that the court enter an order directing the Pennsylvania Supreme Court's Disciplinary Board to turn over counsel's file. *Id.* Petitioner claimed that the contents of the file would have reflected counsel's substance abuse and financial problems. *Id.* This motion was dismissed as meritless and said dismissal was affirmed by the Pennsylvania Supreme Court on June 24, 1999. *See Commonwealth v. Chester*, 733 A.2d 1242 (Pa. 1999).

On August 16, 1999, Petitioner filed a *pro se* Habeas Corpus Petition in the United States District Court for the Eastern District of Pennsylvania. Counsel was appointed, and on January 29, 2001, habeas counsel discovered new evidence regarding Mr. Edwards's police record. (Petitioner's Supplemental Mem. p.4.) This evidence was uncovered following the submission of an affidavit dated December 13, 2000, in which the trial attorney for Co-defendant Richard Laird mentioned that Petitioner's counsel had been arrested for driving under the influence. *Id.* Within sixty days of learning of the evidence, Petitioner filed an additional PCRA petition in the

---

[5] The alleged acts for which Petitioner was convicted occurred in Bristol Township, Pennsylvania.

state court, raising these new claims and requesting an evidentiary hearing to present this new evidence. *Id.* On April 27, 2001, Petitioner filed an Amended Petition for Habeas Corpus Relief, which was stayed pending final resolution of the state petition.

In his second PCRA, Petitioner raised a general conflict of interest claim and several sub-claims that: (1) trial counsel labored under an actual conflict of interest because he was facing criminal charges in the same jurisdiction and at the precise time that he represented Petitioner (before and after this capital trial); (2) trial counsel failed to disclose this conflict to Petitioner; (3) the trial judge, who knew or should have known about this conflict, failed to inquire as to whether Petitioner wished to proceed with conflict-free counsel; (4) the Commonwealth violated Petitioner's rights in failing to disclose the information that formed the basis for this conflict of interest; and (5) abundant newly-discovered evidence proved that trial counsel violated his duty of loyalty to Petitioner and substantially hampered counsel's ability to represent Petitioner effectively. (Petitioner's Supplemental Mem. pp.3-4.) Petitioner moved for Judge Biester to recuse himself from these PCRA proceedings, as he had been actively involved in the underlying trial and had been implicated in the allegations of misconduct. *Id.* Judge Biester declined to recuse himself and on May 21, 2001, dismissed the petition as having been untimely filed. (Petitioner's Pre-Argument Mem. p. 6.) Petitioner appealed to the Pennsylvania Supreme Court and on March 21, 2006, the lower court's dismissal was affirmed. *Id.* Petitioner now revisits his Petition for Habeas Corpus relief, alleging in pertinent part that:

> [Edwards's] duty of loyalty was necessarily compromised, as he had to
> choose between advocating a forceful defense on behalf of petitioner and
> thereby run the risk of alienating the very same prosecutor with the power
> to effectively send him to prison, destroy his professional reputation, and
> perhaps jeopardize his license to practice law or temper his defense of

9

> [P]etitioner in order to curry favor with the prosecution, hoping that a less-than-spirited defense might better his chances of securing [admittance to the Accelerated Rehabilitative Disposition Program] or some other lenient disposition.

(Pet. Amended Petition For Habeas Corpus Relief and Mem. Supp. 11-12.)[6]

Petitioner's Amended Petition for habeas corpus relief is properly before this Court as Petitioner has alleged Sixth Amendment violations concerning his right to counsel and every level of the state court has been presented with the opportunity to pass on these claims.[7] Due to the procedural bar, Petitioner's claims have been effectively exhausted by the state courts. However, because this bar has not been regularly applied and consistently followed in similar actions, it is not an independent and adequate state bar sufficient to block federal review. *See Ford v. GA*, 498 U.S. 411 (1991); *Bronshtein v. Horn,* 404 F.3d 700 (3d Cir. 2005); *Laird v. Horn*, 159 F. Supp. 2d 58, 74 (Pa. 2001).

---

[6] In subsequent briefing, Petitioner further alleged in pertinent part that:

> Trial counsel's conflict of interest was multi-layered. First, trial counsel was being prosecuted for criminal charges by the same prosecutor's office that was prosecuting Petitioner at the very same time he was preparing for and participating in trial. Second, at the time he represented Petitioner at trial, trial counsel was actively petitioning the District Attorney of Bucks County to permit him to enter the ARD diversionary program to avoid the mandatory jail sentence he was facing and was thus seeking leniency from and needed to curry the favor of the same prosecutor who sought to convict and condemn to death his own client.

(Petitioner's Pre-Arg't Memorandum, p. 3.)

Although Petitioner goes on to list a plethora of other personal issues Mr. Edwards was facing during the time of his representation, these circumstances are not relevant for purposes of assessing whether or not an evidentiary hearing is warranted on the instant conflict claim.

[7] *See* 28 U.S.C § 2254(b)(1)(Before a federal court can review such claims, a petitioner must first exhaust the remedies available at the state level).

        **(a)**     **the Procedural Bar Relied on by the Commonwealth Was Not Sufficiently Established to Qualify as an Independent and Adequate State Rule at the Time of the Alleged Default**

On November 17, 1995, the General Assembly amended the PCRA to require, as a matter of jurisdiction, that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . " 42 Pa.C.S.A. § 9545(b)(1).[8] A judgment becomes final "at the conclusion of direct review, including discretionary review by the Supreme Court of United States and the Supreme Court of PA, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The PCRA amendments became effective on January 16, 1996. Petitioner's judgment became final on November 12, 1991, when the United States Supreme Court denied his Petition for Writ of Certiorari. *See Chester*, 895 A.2d at 522. Because Petitioner's judgment became final before the effective date of the PCRA amendments, he was provided one year following the effective date of the amendments to file his claim. 42 Pa.C.S.A. § 9545(b)(3). Petitioner did not actually file his claim until February 8th, 2001. *See Commonwealth v. Chester,* 895 A.2d 520 (Pa. 2006). Accordingly, his claim was procedurally defaulted and is now unreviewable, unless it is determined that the state procedural bar was insufficient. *See Doctors v. Walters*, 96 F.3d

---

[8] The PCRA amendments were made subject to certain enumerated exceptions, including when a petitioner fails to raise a claim which resulted from: (a) interference by government officials in violation of the Constitution or laws of the Commonwealth or of the United States; (b) facts on which the claims is predicated were unknown to the petitioner and could not have been discovered by the exercise of due diligence; or ( c) the right asserted is a constitutional right recognized by either the United States Supreme Court or the Supreme Court of Pennsylvania after the expiration of the allowed time period and has been held by that court to apply retroactively. *See* 42 Pa.C.S.A. §9545(b)(1). Here, the state courts determined that Chester's claims were time barred and that he did not meet any of the enumerated exceptions. *See Commonwealth v. Chester*, 895 A.2d 520, 524 (Pa. 2006).

675 (3d Cir. 1996).

When a procedural default occurs, federal review of the claim is typically not permitted as long as the procedural default is "independent and adequate." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991)("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ").  In order to determine whether a particular procedural rule is "independent and adequate," the court must identify the rule, ascertain the time at which the alleged default occurred, and then decide whether the rule was firmly established and regularly and consistently applied at the time of the alleged violation. *See Ford*, 498 U.S. at 424.  For a state procedural rule to provide an adequate basis for precluding federal review of a prisoner's habeas claim, said rule must possess the following attributes: (1) the rule must speak in unmistakable terms; (2) all state appellate courts must refuse to review the petitioner's claims on the merits; and (3) the state courts refusal to review the claim must be consistent with its other decisions. *Doctors*, 96 F.3d at 683-84.  A state procedural rule will not bar federal review of a habeas claim unless the rule was firmly established and regularly followed at the time the default occurred. *Ford*, 498 U.S. at 424.

As noted above, the state procedural rule at issue in this case is 42 Pa.C.S.A. § 9545, which provided a jurisdictional period of one year after a judgment became final, for a petitioner to file a PCRA claim. The Commonwealth of Pennsylvania formerly followed a relaxed waiver doctrine during PCRA review of capital convictions, whereby the Pennsylvania Supreme Court's "practice [was] to address all issues arising in a death penalty case irrespective of a finding of waiver." *Commonwealth v. Morris*, 684 A.2d 1037, 1042  n. 11 (Pa. 1996), *cert. denied,* 521

12

U.S. 1106 (1997). *See also Commonwealth v. Crispell*, 608 A.2d 18 (Pa. 1992)(holding that the court would address new claims on the merits even though defendant did not include claims in post-trial motions or in arguments to Supreme Court because the case involved the death penalty); *Commonwealth v. McKenna*, 383 A.2d 174, 181 (1978)(holding that the court bore a duty to transcend procedural rules in capital cases because of the overwhelming public interest in preventing unconstitutional executions). However, this relaxed waiver rule was reversed in *Commonwealth v. Albrecht*, 720 A.2d 693 (1998), wherein it was held that "[w]hile it has been our practice to decline to apply ordinary waiver principles in capital cases . . . we will no longer do so in PCRA appeals." *Id.* at 700 (internal quotations omitted).

Since the *Albrecht* decision, the state courts have been unpredictable in their treatment of the PCRA time bar in capital cases. *See Fahy v. Horn*, 240 F.3d 239, 245 (3d Cir. 2001) (describing the procedural terrain of the state of Pennsylvania regarding the procedural law applicable to death penalty cases as "inhibitively opaque.") The Pennsylvania Supreme Court did not clarify that the state PCRA statute was jurisdictional and non-waivable until 1999, in *Commonwealth v. Banks*, 726 A.2d 374, 376 (1999). Consequently, the Third Circuit has repeatedly held that the rule from *Albrecht* is not a state procedural bar that is independent and adequate in cases where the petitioner's default occurred while the relaxed waiver doctrine was still in favor. *See Bronshtein,* 404 F.3d at 708-709 (acknowledging that "strict enforcement" of 42 Pa.C.S.A.§ 9545(b) did not begin immediately); *Laird*, 159 F. Supp.2d at 74 ("Since petitioner had no way of knowing throughout the pendency of his PCRA proceedings that the Pennsylvania Supreme Court was going to change course and decline to apply the relaxed waiver rule in his case . . . the [c]ourt's decision in *Albrecht* is not a procedural bar that is adequate to

preclude habeas review. . . ").

Petitioner effectively defaulted all his remaining claims on January 16, 1997 - one year after the new jurisdictional requirement became final. However, it is clear from the case law that this state procedural rule was not consistently followed by the courts at the time of the default and thus it is not adequate to bar federal habeas review. This case is procedurally indistinguishable from *Bronshtein* and *Laird*, as Petitioner's default occurred before the relaxed waiver doctrine fell out of favor. Each of these cases are capital cases in which the petitioners filed an untimely claim for post conviction relief. In each case, the court held that it would be unjust to follow the state procedural rule when the petitioner's default occurred at a time when the relaxed waiver doctrine was still in favor. The petitioner in *Bronshtein* defaulted his claims in October of 1998, which was after the PCRA time bar was amended and took effect. *Bronshtein,* 404 F.3d at 708. Nevertheless, the court held that the petitioner's claim could not be barred because it was not clear how the new amendments would be applied to capital cases until the court's 1999 decision in *Banks.* It must follow that Petitioner's default, which occurred prior to both the decision in *Banks* and the effective date of the PCRA amendments, must also be excused for purposes of habeas review. Although Petitioner's PCRA was filed later than Co-defendant Laird's, the relevant date is the date of the actual default and not the date of the PCRA filing.[9] Accordingly, the PCRA state procedural rule cannot bar federal habeas review of this claim.

---

[9] The date of the PCRA filing is only significant concerning whether it was filed in a reasonable amount of time after learning of the factual basis for a claim. Specifically, the petitioner is required to file within 60 days of the discovery of new evidence. It is clear that Petitioner has met this requirement by filing his PCRA petition eight days after learning of his attorney's DUI offense.

### (b)  *De Novo* Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[10] requires a federal habeas court "collaterally reviewing state proceedings to afford deference to the state court's legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004), *cert. denied,* 544 U.S. 1063 (2005). Findings of the state court are presumed to be correct, but may be rebutted by clear and convincing evidence. *Id.* *See also Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009), *cert. denied,* 130 S.Ct. 1574 (2010). Specifically, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

A state court decision is "contrary to" Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). An "unreasonable application" of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's cases" or if it

---

[10] The AEDPA was enacted on April 24, 1996.

"either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407. However, "Section 2254(d) applies only to claims already 'adjudicated on the merits in State court proceedings.'" *Appel v. Horn*, 250 F.3d 203, 210 (3d. Cir. 2010)(internal citations omitted). Therefore, if a properly preserved claim was not addressed by the state court on the merits, the deferential standards of AEDPA do not apply. Under these circumstances, "a court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." *Id.*

In his second PCRA petition, Petitioner presented claims of ineffective assistance of counsel based on an actual conflict of interest and the state dismissed this claim relying on an inadequate procedural bar. This claim was never addressed on the merits, therefore this Court may conduct *de novo* review of this claim.

### ( c )    Evidentiary Hearing

The decision to grant an evidentiary hearing in federal habeas proceedings is in the discretion of the district court. *See* 28 U.S.C. 2254(e)(2). However, the AEDPA imposes an express limitation on the power of a federal court to grant an evidentiary hearing if a petitioner "has failed to develop the factual basis of a claim in State court proceedings." *Id.* In this context, a petitioner has failed to develop the factual basis for a claim in state court only if the petitioner "lacked diligence" in developing the claim, or the petitioner was responsible for some greater fault or oversight. *Siehl v. Grace,* 561 F.3d 189, 197 (3d Cir. Pa. 2009). If the state court refuses to allow the factual development of a petitioner's claim, he will not be automatically precluded from an evidentiary hearing. *See Love v. Morton*, 112 F.3d 131, 136 (3d Cir. 1997). Instead, the purpose of the fault component of the statute is to ensure the prisoner undertakes his

own diligent search for evidence. *Williams*, 529 U.S. at 434.

In *Williams*, the court held that "diligence for purposes of the opening clause of [§ 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . " *Id.* The court went on to explain that diligence in the usual case would require that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.* at 437.

In *Wilson v. Beard*, 426 F.3d 653 (Pa. 2005), the Third Circuit opined that "[i]f a petitioner requests a hearing to develop the record on a claim in state court, and if the state courts [ ] deny that request on the basis of an inadequate state ground, the petitioner has not 'failed to develop the factual basis of [the] claim in State court proceedings' for purposes of § 2254(e)(2)." *Id.* at 665.

Here, Petitioner is seeking an evidentiary hearing to consider the new evidence discovered by his federal habeas attorney, which he claims will demonstrate that his trial attorney was operating under an actual conflict of interest. The Commonwealth argues that the issues underlying Chester's actual conflict of interest claims have been previously litigated at the state level and that Petitioner is attempting to re-litigate these issues by presenting "a different theory as a basis for reexamining an issue that ha[s] already been decided by state courts." (Resp. to Petitioner's Pre-Argument Mem. p.7.) However, this Court finds that Petitioner is not seeking to relitigate the same underlying issue based on the same facts presented in his previous petition. Petitioner's previous ineffective assistance of counsel claims were based on his lawyer's suspension from practicing law due to substance abuse and the alleged conflict of interest that arose from his representation of the Bristol Police Department. The claim presently before this

17

Court, is one of conflict of interest based on newly discovered evidence that Petitioner's trial counsel was arrested and charged with DUI in the same jurisdiction and was being prosecuted by the same prosecutor - and before the same judge - as his client.[11] As such, Petitioner is arguing that his attorney's need to curry favor with the prosecutor's office in order to be admitted to the ARD program, constituted an actual conflict. Petitioner is not attempting to use a claim of ineffective assistance of counsel to bypass a procedural time bar. For reasons previously discussed, the PCRA time limitation does not apply to Petitioner. Instead, Petitioner's actual conflict of interest claim is entirely new and has never been addressed on the merits in the state court because of the state's application of an inadequate procedural bar. Thus it is within this Court's discretion to hold an evidentiary hearing in order to afford Petitioner an opportunity to develop this claim.

However, Respondent further asserts that Petitioner's lack of due diligence prevents him from going forward with his conflict claim. Just several weeks ago in *Morris v. Beard*, 2011 U.S. App. LEXIS 1551 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit specifically addressed the "due diligence" standard as it applies to a conflict of interest claim by a habeas petitioner. Although lengthy, the findings of the *Morris* court regarding this issue bear repeating:

> Noting the lengthy delay and suspicious timing of [Petitioner's] conflict-of-interest claim, the Commonwealth argues that [Petitioner] was anything but

---

[11] Attorney Edwards was arrested on March 29, 1988, just days before commencement of Petitioner's trial. On May 31, 1988 (eleven days after Petitioner's trial concluded) Edwards waived his preliminary hearing. Edwards's matter was transferred to the Bucks County Court of Common Pleas on June 7, 1988 and on July 5, 1988, the Bucks County District Attorney's Office filed a Criminal Information charging him with DUI. On September 15, 1988, Edwards was placed into the ARD program. (Resp. to Petitioner's Pre-Argument Mem. n.1, citing N.T. 3/21/01, p. 9, 95-98.)

diligent in developing his claim's factual predicate. The Commonwealth now concedes, as it must in light of *Bronshtein*, that [Petitioner's] conflict-of-interest claim is not procedurally defaulted. Nevertheless, it contends that the standard for determining whether a state procedural rule is an adequate bar to federal habeas relief is distinct from the analysis of whether a petitioner was diligent in developing a particular claim under § 2254(e)(2). The Commonwealth asserts that the District Court mistakenly conflated the two analyses and held erroneously that [Petitioner] had been diligent in developing his conflict-of-interest claim simply because it found the PCRA's time bar inadequate. According to the Commonwealth, [Petitioner's] thirteen-year delay dooms his request for a hearing, regardless of whether the PCRA's statute of limitations is valid.

The Commonwealth's argument is not without force. It strains credulity to say that [Petitioner] "diligently" developed his conflict-of-interest claim in the traditional sense of the word. Despite knowing of [his attorney's] concurrent representation during his 1983 trial, [Petitioner] waited until 1996 to raise the issue. In doing so, he passed up numerous opportunities to make his claim; neither his post-trial motions, nor his direct appeal, nor his first PCRA petition mention [his attorney's] conflict. Conveniently, it was not until November 1996, just one month after [his brother, who was also suspected of committing the murder] died, that [Petitioner] first claimed that [his attorney's] dual representation created a conflict that led him to avoid portraying [his brother] as the shooter.

Nevertheless, we are constrained to agree with the District Court that [Petitioner] was "diligent" in the technical sense that the term is used for purposes of § 2254(e)(2). As the Commonwealth points out, we observed in *Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005), that the standards for determining procedural default and diligence under § 2254(e)(2) are not coterminous. *Id.* at 665 n.10. Yet we further explained that the two standards are "analytically linked." *Id.* at 665 (citing *Williams*, 529 U.S. at 432). Thus, when "a petitioner requests a hearing to develop the record on a claim in state court, and if the state courts . . . deny that request on the basis of an inadequate state ground, the petitioner has not 'failed to develop the factual basis of [the] claim in State court proceedings' for purposes of §2254(e)(2)." *Id.* (brackets in original). n6

> n6 The Commonwealth attempts to distinguish *Wilson* by suggesting our holding there was predicated on the fact that the petitioner's untimely claim was based on newly-discovered evidence. [Petitioner's] case is different, argues the Commonwealth, because he had the information necessary to bring his conflict-of-interest claim in 1983. We disagree because nothing in *Wilson* implies that our finding of diligence turned on the petitioner's newly discovered evidence. Rather, our decision was based on the conclusion that *Wilson*, like Petitioner, had been denied a state evidentiary hearing on his claim solely because of an inadequate state procedural rule. *See* 426 F.3d at 665-66. The factual distinction

highlighted by the Commonwealth is thus immaterial.

> This is precisely the scenario we confront in this appeal. As noted above, in assessing a petitioner's diligence, we focus on whether he sought an evidentiary hearing in the manner required by state law. *See Williams*, 529 U.S. at 437. Here, [Petitioner] did so in his second PCRA petition by raising [his attorney's] conflict of interest, submitting preliminary evidence on the issue, and requesting an evidentiary hearing to develop the claim further. Thus, this is not a case where the petitioner never raised the claim or never sought a hearing in state court, or where the petitioner was "given a hearing on a claim in state court but nonetheless fail[ed] to fully develop the record." *Wilson*, 426 F.3d at 665 n.10. Rather, it is a case where the petitioner was denied a hearing on his claim solely because the state court applied an inadequate state procedural rule.

*Id.* at **22-24.

As previously discussed, Petitioner herein was denied review of the instant conflict claim on the jurisdictional basis of timeliness. Assessing these circumstances in accordance with the ruling set forth in *Morris,* this Court finds that Petitioner utilized adequate diligence in discovering and raising the instant conflict claim, and this, combined with the facts and circumstances more fully set forth hereinabove, warrants an evidentiary hearing.[12]

---

[12] For the reasons set forth herein, this Court need not make a determination regarding the trial court's failure to conduct a proper (or any) inquiry regarding a potential conflict at this time, as the prejudice that might have stemmed from said alleged failure will be properly borne out at the evidentiary hearing.

### III.     Conclusion

For the reasons set forth hereinabove, Petitioner's First Degree Murder conviction and death sentence shall be vacated without prejudice and Petitioner's request for an evidentiary hearing regarding his conflict of interest claim shall be granted.  A ruling on all remaining non-capital, guilt-phase claims is deferred pending disposition of Petitioner's conflict of interest claim.

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones, II  J.