IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ROBERT CHESTER | : | |
|     Petitioner, | | |
| v. | : | CIVIL ACTION<br>NO. 99-4111 |
| COMMISSIONER MARTIN HORN;<br>PHILIP JOHNSON; JOSEPH P.<br>MAZURKIEWICZ; and<br>THE DISTRICT ATTORNEY OF BUCKS<br>COUNTY | :<br><br><br>: | |
|     Respondents. | | |

**MEMORANDUM**

**JONES, II  J.**                                                                                          May 22, 2013

**I.    Introduction**

Presently before this Court is Petitioner Frank Robert Chester's claim that throughout his murder trial, counsel was laboring under a conflict of interest that effectively denied Petitioner his 6th Amendment right to counsel.[1]

**A.    Background**

In 1987, Petitioner and his co-defendant were charged with the brutal slaying of Anthony Milano in Bristol, Pennsylvania. On March 22, 1988, Petitioner retained Attorney Thomas Edwards, who entered his appearance the following day. On March 29, 1988, Edwards was arrested for driving under the influence ("DUI"). On May 20, 1988, Petitioner was found guilty

---

[1] On February 28, 2011, this Court granted habeas relief with regard to Petitioner's First Degree Murder conviction and sentence. Although numerous other non-capital guilt-phase issues remain for this Court's consideration, a determination was made that Petitioner's Conflict of Interest Claim would be addressed first, as the granting of relief on said claim would render the remaining claims moot.

1

and the death sentence was imposed. It wasn't until June 7, 1988, after Edwards had already filed post-trial motions on behalf of Petitioner that Edwards was formally charged with DUI and was being prosecuted by the same Assistant District Attorney and before the same judge as those involved in Petitioner's murder trial. On July 15, 1988, while Petitioner's post-trial motions were pending before Judge Biester, Edwards pled "not guilty" to the DUI charge, in front of Judge Biester. Because this was Mr. Edwards's first DUI offense, he was eligible for the Accelerated Rehabilitative Disposition Program (ARD). ARD was a diversionary program of leniency offered only to first time offenders and the District Attorney's office had sole authority in choosing whether to allow Mr. Edwards into the program. On September 15, 1988, Mr. Edwards was admitted into the ARD program by the Honorable Edward G. Biester, Jr.. On June 29, 1989, Judge Biester denied Petitioner's Post-Verdict Motions.

Although Petitioner's claim of a conflict of interest is primarily based upon the fact that Edwards had a criminal charge pending against him in Bucks County at the same time that he represented Petitioner, Petitioner also asks this Court to consider evidence pertaining to Edward's personal financial struggles, legal battles, post-traumatic stress syndrome, and the illness of his wife at the time of Petitioner's trial, to demonstrate that Edwards's loyalties were divided and that a conflict of interest existed which adversely affected his representation and the ultimate outcome of the case. For the reasons set forth hereinbelow, Petitioner's conflict of interest claim shall be denied.

II. **Discussion**

    A. **The law of "Conflict of Interest"**

Early Supreme Court cases regarding conflicts of interest focused on "multiple representation" claims, where one attorney was representing multiple co-defendants. If a party

could show that multiple representation led to ineffective assistance of counsel, prejudice was presumed regardless of whether it was independently shown. *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978).

Two years later, the Supreme Court addressed two issues reserved in *Holloway*: (1) whether a trial judge must inquire into the propriety of multiple representation even though no party lodges an objection, and (2) whether the *mere* possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel. *Cuyler v. Sullivan*, 446 U.S at 335, 345 (1980). First, the Court held that a trial court does not need to perform a *sua sponte* inquiry into conflict of interest unless "the trial court knows or reasonably should know that a particular conflict exists." *Sullivan*, 446 U.S at 349. Second, the *mere* possibility of conflict is not sufficient; rather, a defendant must show that his counsel *actively* represented conflicting interests. *Sullivan*, 446 U.S at 350.

The Third Circuit clarified its understanding of *Sullivan* by requiring a defendant to prove that an alleged conflict of interest on the basis of mixed representation adversely affected counsel's performance. *U.S. v. Gambino,* 864 F.2d 1064, 1072 (3d Cir. 1988). To prove this adverse effect on counsel's performance, a defendant must (1) demonstrate that some plausible alternative defense strategy or tactic might have been pursued; and (2) establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *Gambino,* 864 F.2d at 1070 (quoting *United States v. Fahey,* 769 F.2d 829, 836 (1st Cir. 1985)).

In 2002, the Supreme Court expanded the *Sullivan* test to conflict of interest claims where the defense counsel was simultaneously representing the victim. *Mickens v. Taylor*, 535 U.S. 162 (2002). The court established that to prove actual conflict of interest, a defendant must

show that it was a "conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171. "[D]efects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens*, 535 U.S. at 166.

Therefore, the threshold question becomes whether or not the trial court knew or had reason to know that a particular conflict existed and if so, whether the trial court performed the appropriate inquiry. *Sullivan*, 446 U.S at 349. When the trial judge is not aware of the conflict, and thus not obligated to inquire, prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Mickens*, 535 U.S. at 172-73. To prove an actual conflict of interest, a defendant must show that the conflict adversely affected the defense and had a probable effect on the trial's outcome. *Mickens*, 535 U.S. at 171; *Gambino,* 864 F.2d at 1072.

While *Mickens* expanded the definition of conflict of interest to include the issue of defense counsel also representing the victim, the court did not explicitly establish whether the test in *Sullivan* should be expanded to all conflict of interest claims. Of particular note, the Supreme Court has not accepted any case based on a conflict of interest theory related to the defense counsel's pending criminal charges. As such, the determination for whether or not to apply the *Holloway*/*Sullivan*/*Mickens* test to a conflict of interest claim about the counsel's pending criminal charges must be determined by analyzing precedent from the Third Circuit.

The claim before this Court involves an alleged conflict of interest that led to ineffective assistance of counsel under the Sixth Amendment.[2] The Supreme Court has recognized that "the

---

[2] The test for conflict of interest causing ineffective assistance of counsel is distinct from a claim of ineffective assistance of counsel. Specifically, a claim for ineffective assistance of counsel requires a showing of prejudice, while a claim for conflict of interest presumes prejudice upon a showing of actual conflict and adverse effect. To demonstrate the difference, the standard for ineffective assistance of counsel is *Strickland v. Washington*, addressing

4

right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "The Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *Gambino,* 864 F.2d 1064, 1069 (3d Cir. 1988) (*quoting Wood v. Georgia,* 450 U.S. 261, 271 (1981)); *see also Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d Cir.1984).

Prior to the Supreme Court's decision in *Mickens*, the Third Circuit held that the *Holloway/Sullivan* standard applied to conflict of interest cases beyond mixed representation claims. In *Zepp*, the defendant argued that her counsel had an actual conflict of interest due to (1) his potential liability for the same charges on which she was tried and (2) the fact that he was a witness for the prosecution. *Zepp,* 748 F.2d at 127. This was an issue of first impression for the court. *Id.* ("The typical conflict of interest cases giving rise to claims of ineffective assistance of counsel involve multiple representation of clients …"). The court held that for any conflict of interest claim under the Sixth Amendment, a defendant must demonstrate an *actual* conflict of interest; not simply the potential for a conflict of interest. *Zepp*, 748 F.2d at 136. Moreover, the potential pending criminal liability for aiding the defendant was not deemed per se actual conflict. In *Zepp*, the court found that there was an actual conflict of interest because counsel's

---

a novel claim of "actual ineffectiveness" of counsel, as compared to a claim that "counsel's assistance was rendered ineffective by a conflict of interest" (e.g. the claim in *Sullivan* and *Wood*). *Strickland v. Washington*, 466 U.S. 668, 683, 671-75 (1984). The court determined that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To determine whether the counsel's performance met the requisite benchmark, the defendant must (1) show that counsel's performance "made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment" and (2) show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to the first prong, the "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The second prong is in marked contrast to conflict of interest claims. In conflict of interest claims, there is no requirement for proving that "deficient performance prejudiced the defense." Rather, prejudice is presumed upon a showing by defendant that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. at 350) (contrasting *Sullivan*'s conflict of interest claim with allegation of ineffectiveness of counsel alleged in in *Strickland*).

5

potential criminal liability implicated the defendant's case. *Zepp*, 748 F.2d at 136. The court found that the fact that defense counsel became a prosecution witness was clear evidence of an adverse, prejudicial impact on defendant's case. *Zepp*, 748 F.2d at 139.

The test for adverse impact outlined in *Zepp* was not overruled, but rather confirmed, by *Mickens*.

### B. The Third Circuit Utilizes The *Sullivan/Mickens* Test For Conflict Of Interest Claims Where Defense Counsel Has Pending Criminal Charges, Instead Of A *Per Se* Rule.

Although the Third Circuit has not specified the standard for conflict of interest claims involving pending criminal charges since the Supreme Court's *Mickens* decision,[3] *Zepp* renders it appropriate to consider this question under the *Sullivan/Mickens* test.

Clearly, counsel's pending criminal charges may be appropriately considered as a potential conflict of interest because:

> It may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer. Such retaliation would be unethical; but still the defense lawyer may fear it, at least to the extent of tempering the zeal of his defense of his client somewhat.

*Thompkins*, 965 F.2d at 332 (*citing Wood v. Georgia,* 450 U.S. 261, 272 (1981)); *Ferri v. Ackerman,* 444 U.S. 193, 204 ("[A]n indispensable element of the effective performance of [an

---

[3] Prior to the Supreme Court's decisions in *Sullivan* and *Mickens*, the Third Circuit addressed a case where there was an alleged conflict of interest because defense counsel had pending criminal charges. In *United States v. DeFalco*, 644 F.2d 132, 136 (3d Cir. 1979), the Court held that there was a conflict of interest in violation of the Sixth Amendment when defendant's counsel had entered into a plea bargain in, and subsequently been suspended from practicing law by, the same federal district court where he was appealing defendant's case. *DeFalco*, 644 F.2d at 133. In *DeFalco*, defendant's counsel had already been indicted three times by a grand jury prior to being retained as defendant's counsel. *DeFalco*, 644 F.2d at 133. The judge for counsel's charges was the same judge as defendant's charges. *Id.* Counsel sought to have his personal case transferred to a different judge, and succeeded after his second appeal. *Id.* Counsel entered into a plea agreement in front of his newly-assigned judge, with the first judge appearing and consenting to the transfer and the plea agreement. *Id.* The plea agreement occurred during his representation of defendant. *Id.* As a condition of his plea deal, counsel was immediately suspended from practicing law. *Id.* This case, though, was decided before *Sullivan* and *Mickens*, and the test employed was overruled by those decisions. *DeFalco*, 644 F.2d at 136-37 (allowing showing of potential for "remote" conflict without proof of actual conflict to suffice, a standard which was subsequently overruled in *Sullivan* and *Mickens*). As such, the *DeFalco* holding is not dispositive of the issue at bar.

attorney's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.").

### C. Trial Court's Discretion To Permit Counsel To Continue Representing A Defendant When Counsel Has Pending Criminal Charges In The Same Jurisdiction.

As briefly discussed hereinabove, a trial court need only inquire into a conflict of interest when it "knows or reasonably should know that a particular conflict exists." *Sullivan*, 446 U.S at 349. For example, the Supreme Court held that a trial court should have inquired into whether an actual conflict of interest existed when an employer hired defense counsel for employees charged with a crime committed in the commission of their job. *Wood v. Georgia*, 450 U.S. 261, 267 (1981). It was determined that the failure of the trial court to recognize and analyze this clear, potential conflict merited a remand to the District Court to determine whether there was an actual conflict of interest. *Wood*, 450 U.S. at 273-74.

The Third Circuit has neither adopted an automatic reversal standard,[4] nor established its own threshold inquiry into actual conflict of interest for cases in which the trial court knew or should have known of a potential conflict of interest.

In this case, while Judge Biester arguably knew or should have known that a potential conflict existed, the timing of occurrences cannot be ignored. Petitioner's trial counsel, Thomas Edwards, was charged with a DUI and was being prosecuted by the same ADA and before the

---

[4] Under this standard, if the trial court is sufficiently apprised of "even the possibility of a conflict of interest," it has (1) an inquiry obligation to investigate the facts and details of the attorney's interest to determine if there is an "actual conflict, a potential conflict, or no genuine conflict at all" and (2) if there appears to be an actual or potential conflict, "the court has a subsequent 'disqualification/waiver' obligation." However, "[i]f the court's inquiry reveals that there is no genuine conflict at all, the court has no further obligation." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir.1994). Under this test, when the district court fails to fulfill its inquiry obligation, reversal is automatic. *Id.*

same judge as those involved in Petitioner's murder trial. Attorney Edwards was retained by Defendant on March 22, 1988, and entered his appearance the following day. On March 29, 1988, Edwards was arrested for a DUI. On May 20, 1988, Petitioner was found guilty and the death sentence was imposed. However, it wasn't until June 7, 1988 - after Edwards had already filed post-trial motion on behalf of Petitioner - that Edwards was formally charged with DUI. On July 15, 1988, while Petitioner's post-trial motions were pending before Judge Biester, Edwards pled "not guilty" to the DUI charge, in front of Judge Biester.

The only Third Circuit cases providing guidance during the relevant timeframe of the instant matter, were *Zepp* and *DeFalco*. Both are clearly distinguishable from the present case. In *Zepp*, the alleged crime was in furtherance of a cover-up of defendant's crime and he was called as a prosecutorial witness because of the alleged crime. In contrast, in this case, defense counsel's DUI was wholly unrelated to defendant's case. Furthermore, in *DeFalco*, potential for actual conflict was found because the plea agreement disbarred counsel, directly hindering defense's case. In contrast, in this case, the agreement made by defense counsel in no way prevented him from serving as defendant's lawyer or disbarred him from the profession. Thus, absent any Third Circuit guidance regarding what constitutes a threshold inquiry, Judge Biester cannot be deemed to have abused his discretion in allowing Mr. Edwards to continue to serve as Petitioner's counsel. The court must assume that "[d]efense counsel is in the best position to determine if a conflict exists." *Mickens,* 535 U.S. at 167–68; *see also* Model R. Prof'l Conduct 1.7(a) – (b).[5]

---

[5] The Model Rules of Professional Conduct state:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

8

## D. Analysis of Petitioner's Conflict Claim

As discussed in detail above, Petitioner herein must demonstrate an actual conflict of interest that adversely affected his defense. Thus, the mere fact that defense counsel had been arrested and was seeking entry into the ARD program for DUI in the same court in which Petitioner's murder trial was being prosecuted, does not constitute a *per se* conflict of interest.[6] Instead, Petitioner must demonstrate that there was an adverse impact, which had a probable negative effect on his case. As such, Petitioner must demonstrate that Attorney Edwards's

---

(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

Model R. Prof'l Conduct 1.7(a) – (b).

[6] Throughout the course of briefing and argument on the conflict of issue claim, Petitioner sought to introduce voluminous evidence regarding extraneous circumstances surrounding Edwards's personal life before, during and after his representation of Petitioner. Namely, Petitioner sought to introduce evidence of Edwards's legal and financial struggles, the fact that he might have been suffering from post-traumatic stress disorder, evidence pertaining to a potential drinking problem, and evidence pertaining to the fact that he was the sole care provider for his ill wife. This Court struggled with the relevancy of said evidence in the context of a conflict of interest claim and held the same under advisement. Upon careful analysis of pertinent case law as set forth hereinabove, this Court stands by its initial inclination to rule that said evidence is not an appropriate consideration for the court in ruling on a conflict of interest claim. These factors have absolutely no bearing on the threshold inquiry regarding whether an actual conflict existed that caused Edwards to "pull his punches in defending his client." Instead, the only evidence that could potentially prove this point, is that regarding Edwards's simultaneous DUI charge.

pending ARD arrangement in some way affected his trial strategy or preparation in Petitioner's case. In doing so, Petitioner must show actual actions, or inactions, that counsel took or failed to take because of his pending ARD arrangement. To succeed in this claim, the "lapse in representation" must be "so egregious as to violate objective standards for attorney performance." *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988). These failings must be the result of the conflict of interest. For example, an attorney's decision to call or subpoena witnesses is a matter of trial strategy to be analyzed under the ineffective assistance of counsel standard of *Strickland* and does not necessarily reflect a conflict of interest without a showing that the trial decision was caused by the conflict. *Gibbs v. Phelps*, 07-CR-36, 2008 U.S. Dist. LEXIS 38467, at *6 (D. Del. May 9, 2008).

Therefore, the mere existence of a pending criminal charge does not necessarily demonstrate a conflict of interest. To that end, this Court cannot ignore the relatively benign nature of the "pending criminal charge" against Mr. Edwards, which Petitioner submits caused a division of loyalty and ultimately led to a conflict that adversely affected him. Clearly, a DUI offense in which the standard punishment is entry into a rehabilitative treatment program cannot be compared to more serious offenses in which the possibility of a career-ending conviction rests in the hands of a zealous prosecutor. Again, Petitioner's trial had already ended and he had already been sentenced to death by the time Edwards officially appeared before Judge Biester on the DUI charge.

In further support of his conflict claim, counsel for Petitioner submitted an Affidavit that bore the signature of Attorney Thomas Edwards. During an evidentiary hearing on this issue, counsel presented the testimony of Attorney Edwards via live video and Edwards denied many of the statements contained within the affidavit. Again, many of these facts had to do with Mr.

Edwards's personal life as it existed at the time he represented Petitioner. Current counsel for Petitioner claim that these statements contained within the affidavit were the words of Mr. Edwards, and were signed off by Mr. Edwards in the presence of a witness. Respondents argue that these statements constitute hearsay under Federal Rule of Evidence 803 because the defense counsel denied them in court, denied signing them, and alleged that they were the words of current counsel. Accordingly, Respondents argue that the statements contained within the affidavit should not be admitted into substantive evidence.

This Court finds that the affidavit at issue does in fact constitute hearsay and does not satisfy any exception to the hearsay rule, including the "catch-all" provision contained within Rule 807. This Court had the opportunity to assess Mr. Edwards's demeanor and testimony first-hand. At the end of the day, nothing Petitioner has provided to this Court establishes that a conflict of interest existed which deprived Petitioner of his Sixth Amendment right to counsel. The existence of potentially different trial strategies that might have been employed by counsel is not enough. Instead, Petitioner must demonstrate that the pending DUI charge against Edwards caused him to adversely change his trial strategy and/or fail to employ certain methods in his trial strategy. Petitioner has failed to do so.

## III. Conclusion

For the reasons set forth hereinabove, Petitioner's Conflict of Interest claim shall be denied. An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

C. Darnell Jones, II    J.