IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ROBERT CHESTER | : | |
|     Petitioner, | | |
| v. | : | CIVIL ACTION |
| COMMISSIONER MARTIN HORN; | | NO. 99-4111 |
| PHILIP JOHNSON; JOSEPH P. | : | |
| MAZURKIEWICZ; and | | |
| THE DISTRICT ATTORNEY OF BUCKS | | |
| COUNTY | : | |
|     Respondents. | | |

**MEMORANDUM**

**Jones, J. II**                                                                                                                              October 7, 2013

### I. Introduction

On May 20, 1988, Petitioner Frank Chester (hereinafter "Petitioner") and his co-defendant Richard Laird, were convicted by a jury in the Bucks County Court of Common Pleas of first-degree Murder, Aggravated Assault, Kidnapping, Unlawful Restraint, False Imprisonment, Possession of Instruments of Crime, and Criminal Conspiracy. On May 21, 1988, the same jury sentenced both Petitioner and Laird to death.

Following his conviction, Post-Verdict Motions were filed on behalf of Petitioner and were denied by the court on June 29, 1989. On August 23, 1989, two new attorneys were appointed to represent Petitioner and through his new counsel, Petitioner appealed his conviction and sentence to the Pennsylvania Supreme Court. On March 20, 1991, the Pennsylvania Supreme Court affirmed judgment of sentence and on November 12, 1991, the United States

1

Supreme Court denied Petitioner's Petition for Writ of Certiorari.

On April 17, 1996, Petitioner, represented by his fourth attorney, filed a petition under the Post Conviction Relief Act ("PCRA") with the trial court. On September 2, 1997, said Petition was ultimately dismissed. Petitioner appealed the dismissal and on June 24, 1999, the Pennsylvania Supreme Court affirmed the lower court's denial of Petitioner's PCRA petition.

On August 16, 1999, Petitioner filed a *pro se* Habeas Corpus Petition in the United States District Court for the Eastern District of Pennsylvania. Counsel was appointed and on February 5, 2001, Petitioner was granted an extension until April 30, 2001 to file an Amended Habeas Corpus Petition. However, on February 8, 2001, Petitioner filed a second PCRA petition in state court, alleging that a conflict of interest by trial counsel resulted in ineffective assistance.

On April 27, 2001, Petitioner filed an Amended Petition for Habeas Corpus Relief. Per the July 24, 2001 Order of the Honorable James T. Giles (ret.), said action was stayed pending final resolution of the outstanding state claim, which was ultimately denied as untimely. On March 21, 2006, the Pennsylvania Supreme Court affirmed the PCRA Court's decision dismissing Petitioner's second PCRA petition.

On November 3, 2008, Petitioner's habeas matter was transferred to this Court.[1] Additional briefing was submitted and on February 8, 2010, the Commonwealth requested that this Court "[ ] affirm Petitioner's convictions for Second Degree Murder and the remaining counts, and remand the case to the trial court permitting the Commonwealth the option of re-sentencing Petitioner on the counts for which he stands convicted and/or providing Petitioner

---

[1] On September 17, 2008, this matter was transferred from Judge Giles to the Honorable Mary A. McLaughlin, before ultimately being assigned to this Court.

with a new trial on First Degree Murder followed by a new sentencing hearing if convicted." (Doc. No. 62 at 3). In an Opinion dated February 28, 2011 (Doc. No. 71), this Court vacated Petitioner's First Degree Murder conviction and death sentence, granted Petitioner an evidentiary hearing on his Conflict of Interest claim, and deferred disposition of the remaining guilt-phase issues pending resolution of same, since the granting of relief on the Conflict issue could potentially render the others moot. Petitioner sought and was granted additional discovery and after further briefing, arguments, and a hearing, this Court denied relief on Petitioner's Conflict of Interest Claim in a Memorandum dated May 22, 2013 (Doc. No. 135). Petitioner sought and was denied Leave to Appeal and on June 18, 2013, both sides were ordered to jointly prepare a list of what they believed to be the remaining issues for this Court's disposition. (Doc. No. 139). Counsel submitted a list of eight (8) issues (Doc. No. 140) and were Ordered to provide a short supplement to their original filings on each. (Doc. No. 141). On August 15, 2013, counsel for Petitioner informed this Court that Mr. Chester no longer wished to pursue any of the remaining claims *except* for the severance issue. Supplemental briefing was provided by the parties (Doc. Nos. 143 & 144), rendering Petitioner's final issue ripe for disposition. For the reasons that follow, relief on this claim will be denied.

**II. Discussion**

Petitioner contends that the trial court's failure to sever his trial from that of his co-defendant resulted in a constitutionally infirm conviction in violation of his right to a fair trial. Petitioner's argument is based on the claim that he and his co-defendant presented "purely antagonistic defenses." (Doc. No. 143 at 2). Respondents argue that this claim is procedurally defaulted because Petitioner did not raise the severance issue as a constitutional violation in state

3

court and that the trial court's decision not to sever the trials was proper. (Doc. No. 144 at 2).

### a. Procedural Default and Exhaustion

Petitioner never presented this claim to the state courts as a federal constitutional issue. On direct appeal, citing state cases which discussed severance in the context of Pa.R.Crim.P. 219(d), Petitioner raised this claim as a state law issue and it was addressed on the merits. During PCRA review, the claim was not presented at all. However, this claim is exhausted as the Pennsylvania Supreme Court would now conclude that Petitioner's federal claim was waived and thus defaulted under the procedural rule announced in *Albrecht*.[2]

Because Petitioner's claim was considered by the state court on the merits, the Antiterrorism and Effective Death Penalty Act's ("AEDPA") deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012), *cert. denied,* 133 S. Ct. 669, 184 L. Ed. 2d 475, 2012 U.S. LEXIS 8923, 81 U.S.L.W. 3287 (U.S. 2012).[3]

---

[2] *Commonwealth v. Albrecht*, 720 A.2d 693, 700 (1998) ("While it has been our 'practice' to decline to apply ordinary waiver principles in capital cases . . . we will no longer do so in PCRA appeals.") (internal citation omitted).

[3] The AEDPA limits federal habeas review of state court judgments. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). In effect since 1996, the AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id.* at 196. (citing *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)). A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts*, 288 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

### b. Review

"Improper joinder does not, by itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *U.S. v. Lane*, 474 U.S. 438, 446 n.8 (1986). As recently reiterated by our sister court in the Middle District, "a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Butler v. Pennsylvania,* Civ. No. 11-826, 2013 U.S. Dist. LEXIS 118842, at *24 (W.D. Pa. July 23, 2013) (quoting *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998)). *See also U.S. v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) (recognizing that motions for severance rest in the sound discretion of the trial judge, whose determination should not be disturbed absent a showing of "clear and substantial prejudice resulting in a manifestly unfair trial.").

Typically, a trial court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993). The potential for such a risk arises when co-defendants assert "mutually antagonistic" defenses. *U.S. v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citing *Zafiro*, 506 U.S. at 538).

Mutually antagonistic defenses exist "when acquittal of one co-defendant would necessarily call for the conviction of the other." *Voigt*, 89 F.3d at 1094 (quoting *U.S. v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991)). This type of situation arises "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *Id.* (quoting *U.S. v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993)). In determining whether mutually antagonistic defenses exist such that severance may be required, the court must ascertain whether "the jury could reasonably construct

a sequence of events that accommodates the essence of all [defendants'] defenses." *Id.* (quoting *U.S. v. Perez-Garcia*, 904 F.2d 1534, 1548 (11th Cir. 1990)).

"While mutually antagonistic defenses have been much discussed in theory, only rarely have courts found that they exist in practice." *Zafiro*, 506 U.S. at 538. *See also United States v. Washington,* Crim. Nos. 12-1959 & 12-2094, 2013 U.S. App. LEXIS 17476, at *8 (3d Cir. Pa. Aug. 21, 2013) (reiterating that the Third Circuit has "explicitly declined to adopt a bright-line rule that mutually antagonistic defenses require severance."); *United States v. Balter,* 91 F.3d 427, 433 (3d Cir. 1996) (rejecting mutually antagonistic defenses argument where defendants failed to identify "any specific trial rights that were compromised by the joint trial" and failed to demonstrate "that the joint trial impeded the jury from making a reliable judgment about guilt or innocence."). Finger-pointing and blame-shifting among co-conspirators is not enough. *See U.S. v. Provenzano*, 688 F.2d 194, 198 (3d Cir. 1982) (affirming denial of motion to sever where all defendants blamed one co-conspirator on the ground that these defenses were not antagonistic, because if jury had believed that only one defendant was to blame, there would have been a failure of proof on the conspiracy charges); *U.S. v. Barber*, 442 F.2d 517, 530 (3d Cir. 1971) (rejecting Appellant's argument that denial of severance prohibited him from calling his co-defendants as witnesses on his behalf because he could not compel them to testify and further noting that "the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another have both been held to be insufficient grounds to require separate trials.") (internal citations omitted). These cases illustrate the well-settled principle that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.

6

Even where a defendant establishes that his defense and those of his co-defendants are mutually antagonistic, severance is not mandatory because mutually antagonistic defenses are not prejudicial *per se*. *Voigt*, 89 F.3d at 1094 (citing *Zafiro*, 506 U.S. at 538-539). More frequently, courts have concluded that the asserted defenses, while in conflict with one another, are not so irreconcilable that "the jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis." *Tootick*, 952 F.2d at 1083.[4] As a result, a defendant cannot demonstrate clear and substantial prejudice resulting in a manifestly unfair trial under such circumstances. *Id.* ("[T]he ultimate question is whether under all of the circumstances, it is within the capacity of the jurors to follow the court's admonitory instructions and, correspondingly whether they can collate and appraise the independent evidence against each defendant solely upon the defendant's own acts, statements, and conduct.").

Just as in *Voigt*, the trial court herein provided the jury with instructions that "were sufficient to cure any potential prejudice from antagonistic defenses." *Voigt*, 89 F.3d at 1096 (quoting *United States v. Rivera*, 6 F.3d 431, 438 (7th Cir. Wis. 1993)). In particular, the trial court provided Petitioner's jury with opening instructions that read in pertinent part as follows:

> Now, the attorneys are advocates in the trial. Each attorney is an advocate for his particular position. And it's important to stress that there are two trials being conducted before you at the same time. Please remember your obligation to distinguish and discriminate in the course of your reception of evidence and testimony, arguments and discussions that there are two trials, two defendants

---

[4] Petitioner relies on *Tootick* for the proposition that he and Laird presented mutually antagonistic defenses. In *Tootick*, the defendant was prejudiced by his co-defendant's counsel's unbridled accusations against him because on the day counsel gave their opening statements, the trial court failed to instruct the jury that said statements were not evidence. 952 F.2d at 1083. Despite Petitioner's argument to the contrary - and as is discussed more fully hereinafter - no similar prejudice was present in this case. (N.T. 5/13/88, pp. V216-220).

7

being tried together. But nonetheless each case is entitled to and must receive from each of you separate consideration, impartial consideration as each of you has promised to give it. The lawyers are advocates for their respective positions. You are the deciders of the facts and ultimately the deciders of the case.

(N.T. 5/13/88, p. V-223).

The jury was given a ten-minute recess and counsel proceeded directly to opening statements.

In its closing instructions, the court similarly charged the jury in pertinent part as follows:

> These are two cases being tried together. I will be speaking to a number of matters which obviously in terms of the legal issues, apply to both cases. I will tell you that in each of these cases each defendant is charged with the same catalog of crimes so that when I deal with the requirements of the crimes, obviously those requirements are referable to either and both defendants. But it is extremely important, as has been noted to you by every attorney who has spoken to you, that you segregate, that you carefully select the evidence with respect to each case and I will be discussing with you from time to time certain rules of disciplines with respect to the application of particular evidence with respect to a particular defendant in the case. I addressed that I guess a couple of times earlier. I will cover it also in the course of these instructions.
>
> All right. Let's begin with a fundamental [principle]. A fundamental principle of our system of criminal law is that every defendant, each of these defendants, is presumed to be innocent. The mere fact that he was arrested and is accused of a crime is not evidence against either of these defendants. Furthermore, the defendant is presumed innocent throughout the trial and unless and until you conclude based upon a careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt. It is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime and that the defendant is guilty of that crime beyond a reasonable doubt. A person accused of a crime is not required to present evidence or prove anything in his own defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that a defendant is guilty, then your verdict should be guilty as to that defendant.

(N.T. 5/19/88 at pp. 652-54).

On direct review of Petitioner's conviction, the Pennsylvania Supreme Court specifically addressed the issue of severance on the merits . . .

> The decision whether to grant a motion for severance is a matter within the sound discretion of the trial court and should not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Tolassi*, 413 A.2d 1003 (Pa. 1980); *Commonwealth v. Lasch*, 347 A.2d 690 (Pa. 1975); *Commonwealth v. Patrick*, 206 A.2d 295 (Pa. 1965). Here the defendants were charged with conspiracy as well as first degree murder. Joint trials are advisable where conspiracy is charged. *Commonwealth v. Patterson*, 546 A.2d 596 (Pa. 1988); Pa.R.Crim.P. 1127(A)(2). Where, however, a party can show that he will be prejudiced by a joint trial, severance is proper. *Commonwealth v. Patterson*, supra; Pa.R.Crim.P. 1128.
>
> In the instant matter appellants correctly assert that the probability of antagonistic defenses is a factor which the trial court should consider in deciding whether to grant severance. *Commonwealth v. Morales*, 494 A.2d 367 (1985). However, more than a bare assertion of antagonism is required. *Id.* The mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials. *See Commonwealth v. Bennie*, 508 A.2d 1211 (Pa. Super. 1986). *See also United States v. Provenzano*, 688 F.2d 194 (3d Cir.), cert. denied, 459 U.S. 1071 (1982). In fact, it has been asserted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together. *Ware v. Commonwealth*, 537 S.W.2d 174 (Ky.1976). *See generally*, 2 La Fave and Israel, Criminal Procedure § 17.2 (Third Edition).
>
> Instant appellants' claim of antagonism falls within this latter category. Neither Chester nor Laird denied involvement in the killing of Anthony Milano. Rather each man claimed that the other had slashed Milano's throat. (N.T. 5/18/88 at p. 480.) These assertions, while inconsistent, do not rise to the level of antagonism that requires severance. Defenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant. *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir.1981). In this case the jury was not faced with such a dilemma. Both men conceded their participation in the killing and disputed only their respective acts in furtherance thereof. Appellants' claim of error with respect to the denial of severance must therefore fail.

*Chester*, 587 A.2d at 1373.

It is well established that "as a rule," a jury is presumed to have followed a court's instructions. *United States v. Hakim*, 344 F.3d 324, 330 (3d Cir. 2003). *See also Murray v. DiGuglielmo,* Civ. No. 09-4960, 2013 U.S. Dist. LEXIS 61615, at *44 (E.D. Pa. Jan. 30, 2013) ("Inasmuch as under U.S. Supreme Court precedent, jurors are presumed to follow the trial court's instructions, it was reasonable to presume that Petitioner's jury did so.") (internal citation omitted). In view of the trial court's limiting instructions to the jury and given that the Pennsylvania Supreme Court identified the correct legal principle from the Supreme Court's decisions,[5] this Court concludes that the Pennsylvania Supreme Court's approval of the trial court's refusal to sever the trials did not result in a decision that was contrary to, or involved an unreasonable application of, federal law as established by the Supreme Court of the United States. Petitioner has failed to demonstrate that the trial court's failure to sever resulted in a trial

---

[5] Even if the state court had not cited federal precedent, it would still have been entitled to the deferential AEDPA standard. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (explaining that citation to federal law is not required to invoke the AEDPA deferential standard). The *Packer* Court explained:

> A state-court decision is "contrary to" [the Supreme Court's] clearly established precedents if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Avoiding these pitfalls does not require citation of [Supreme Court] cases -- indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Id.*, 537 U.S. at 8.

that was fundamentally unfair and as a result, he is not entitled to relief on this claim.

### III. CONCLUSION

For the reasons set forth hereinabove, relief on Petitioner's severance claim shall be denied. Inasmuch as: (1) relief has been previously denied with regard to Petitioner's Conflict of Interest Claim; (2) all remaining guilt-phase claims originally presented in his Habeas Petition have been withdrawn; and (3) relief has already been granted as to the penalty-phase claims, the instant matter shall be remanded to the Court of Common Pleas of Bucks County, Pennsylvania for further proceedings.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.